**Donald C. SULLIVAN, Appellee,**

v.

**Everett Glen WHEELER, Appellant.**

**No. 50250.**

Court of Appeals of Oklahoma,
Division 1.

April 12, 1977.

Rehearing Denied June 7, 1977.

Released for Publication by Order of
Court of Appeals June 30, 1977.

Tryon, Field, Petty & Fletcher by James
R. Fletcher, Guymon, for appellee.

Loofbourrow, Loofbourrow & Manske by
Stanley Ed Manske, Boise City, for appellant.

ROMANG, Judge.

The single issue presented is whether a counterclaim for slander is a permissible response to an action for assault and battery. Plaintiff-Appellee (Plaintiff) filed an action for an assault and battery inflicted on Plaintiff by Defendant-Appellant (Defendant) on May 31, 1975. The Defendant answered denying Plaintiff's allegations and alleging as a counterclaim that the Plaintiff had uttered slanderous remarks about the Defendant on May 24, 1975 and that the parties were discussing the alleged slander at the time the altercation occurred. The Plaintiff filed a reply and a special demurrer to the counterclaim. The District Court sustained the demurrer, dismissed the counterclaim, but specifically ruled that the Defendant could offer the evidence on provocation in mitigation of Plaintiff's plea for punitive damages. Defendant appeals the District Court's dismissal of his counterclaim.

The problem of the scope of the counterclaim permitted by 12 O.S.Supp.1974, § 273 has given rise to frequent discussion. The Oklahoma Code of Civil Procedure, 12 O.S. 1971, § 1, was derived from the Field Code of New York of 1848 and its amendments. The original Field Code did not contain a counterclaim provision but one was added in 1852. As will be seen, the pertinent portions of the 1852 Code remain the foundation of our counterclaim statute in § 273.

Although the Field Code is ancient and was widely adopted in the western portion of the United States, research has discovered that the instant problem has been squarely decided in only a few cases, although its fact pattern is fairly obvious, i. e., slanderous words followed by physical violence. Nor do we find much guidance in the few cases squarely in point.

The Field Code of 1852 in section 149 provided that the defendant's answer "must contain" (1) a denial and "2. A statement of any new matter constituting a defense or counterclaim, in ordinary and concise lan-

guage without repetition." New York Code of Procedure, Voorhies' Second Edition, 1852 (Field Code hereafter). By § 152 the counterclaim "must be one existing in favor of a defendant and against a plaintiff, between whom a several judgment might be had in the action, and arising out of one of the following causes of action:

"1. A cause of action arising out of the contract or transaction set forth in the complaint as the foundation of the plaintiff's claim, or connected with the subject of the action."

At common law a defendant in all cases had to bring a separate action against the plaintiff regardless of the relation between the two claims. Later the common law permitted the defendant to counterclaim against the plaintiff if the defendant's claim was based on a breach of the same contract sued upon by the plaintiff. In such a case the defendant could only use his claim as a defense to reduce the plaintiff's recovery. By statute the defendant was permitted in actions on a debt to use a liquidated claim as a set-off against the plaintiff's claim. As a later development the common law permitted recoupment which involved "a cross-demand for damages sustained by defendant in the same transaction, allowed in reduction of damages." Koffler and Reppy, Common Law Pleading (1969) p. 515. See also Shipman, Handbook of Common Law Pleading (3rd Ed. 1923) p. 365. Shipman, citing *Stow v. Yarwood,* 14 Ill. 424 (1853), indicates that the doctrine of recoupment was developed to "promote justice," "prevent useless litigation," avoid "circuity of action," and prevent "multiplicity of suits." In the Judicature Act of 1873, England abandoned the requirement of a connection between the two claims. This approach also colors Rule 13 of the Federal Rules of Civil Procedure. Clark, Handbook of the Law of Code Pleading (2d Ed. 1947) p. 637.

Our statutes provide that the answer shall contain, *inter alia,* "A statement of any new matter constituting [1] a defense, [2] counterclaim or set-off, or [3] a right to relief concerning the subject of the action,

in ordinary and concise language, and without repetition." 12 O.S.1971, § 272. A counterclaim "must be

"[1] one existing in favor of a defendant and against a plaintiff, between whom a several judgment might be had in the action, and [either]

"[2] arising out of the contract or transaction set forth in the petition as the foundation of the plaintiff's claim *or*

"[3] connected with the subject of the action *or*

"[4 inapplicable in this case.]" (Emphasis and brackets added.)

12 O.S.1974 Supp., § 273. Section 273 further states that "the right to relief concerning the subject of the action mentioned . . . [in § 272[3] supra] must be a right to relief necessarily or properly involved in the action for a complete determination thereof, or settlement of the question involved therein." This latter sentence is inapplicable by its own terms to the counterclaim situation mentioned in § 272[2] and thus is not a limitation of the counterclaim described in § 273.

Stated as simply as possible, and as applied to the instant case, the counterclaim is permissible if (1) it is in favor of the defendant against the plaintiff and (2) "arises out of the . . . transaction" set forth "as the foundation of the plaintiff's claim" or (3) is "connected with the subject of the action." Since there is no question but that the alleged counterclaim is one in favor of the defendant and against the plaintiff, the crucial question is (1) whether the alleged slander arises out of the transaction alleged to be the foundation of the plaintiff's claim for assault and battery or (2) whether the slander is connected with the subject of the assault and battery? If either of these questions is answered affirmatively, then the counterclaim should have been permitted.

The best discussed case squarely in point is *Mulcahy v. Duggan,* 67 Mont. 9, 214 P. 1106 (1923). In that case the plaintiff sued for actual and exemplary damages based on an alleged assault and battery committed

by the defendant on May 17. The defendant answered including a counterclaim for libel published by the plaintiff on May 8. The trial court ruled, similar to the present case, that the counterclaim was not proper but that evidence of the libel was admissible in mitigation of exemplary damages. This decision was reversed by the Montana Supreme Court. The Montana statute provided that "the counterclaim . . . must be . . . a cause of action arising out of the . . . transaction, set forth in the complaint, as the foundation of the plaintiff's claim." Applying this statute the Court said it was "not limited to the facts alleged in the complaint" but that they look to " 'all of the facts and circumstances out of which arose the injury complained of by' " the plaintiff. (Citations omitted.) They noted that the term "transaction" is not legal and technical but is "common and colloquial . . . to be construed according to the context and to approved usage." (Citations omitted.) And finally the Court commented as follows on *Earl v. Times-Mirror Co.*, 185 Calif. 165, 196 P. 57 (wherein the California Supreme Court held that a counterclaim for a libel which caused the libel on which the plaintiff relied was permissible.)

"We cannot approve a rule which arbitrarily uses the element of time in determining whether or not various causes of action arise out of the same 'transaction.' If, as a matter of fact, there is such a connection that the acts complained of were the result of complainant's own acts, we think all causes of action arising therefrom must be litigated in one action. "We might add, in passing, that the rule which permits the showing of acts of provocation in mitigation of exemplary damages is of itself a recognition that there is a connection between certain slanders, certain libels, and between certain slanders, libels, and other tortious acts and assaults. Wherever such connection exists they are parts of the same transaction."

Without a clear rationale the earlier case of *Macdougall v. Maguire*, 35 Cal. 274, 95 Am.Dec. 98 (1868) had specifically held that

even where evidence of the prior slander was admissible to mitigate exemplary damages for an alleged assault and battery, the counterclaim for slander did not arise out of the transaction on which the assault and battery was based. The rationale in *Mulcahy* was specifically rejected in *Longpre v. Schmele*, 64 S.D. 70, 264 N.W. 201 (1935) but *Longpre* did not invoke an assault in response to a slander. It involved an assault and battery resulting from the plaintiff's alleged cutting of defendant's dam.

In *Howe v. Struble*, 90 Ohio App. 172, 104 N.E.2d 197, the Ohio court permitted a counterclaim for slander and assault (not battery) where the defendant had assaulted and battered the plaintiffs in response to continuing harassment by the plaintiffs. In so doing the Court quoted *Mogle v. Black*, 3 Ohio Cir.Dec. 27, 5 Ohio Cir.Ct.R. 51 as follows:

"A 'transaction' is defined by Webster, 'that which is done', 'an affair.' Thus any primary right of the defendant which is violated in 'that which is done,' or 'the affair' set forth in the defendant's petition or connected with it, is, if we give the ordinary meaning to the words of the statute, a proper matter of counterclaim."

From this brief review of the few most pertinent cases (for others not cited see Annot., Tort Counterclaim in Tort Action, 10 A.L.R.2d 1167 (1950)) it is clear that this situation has not been precisely defined by Field Code States. Nor has the precise relationship demanded by § 273 been defined in Oklahoma cases. Where plaintiff's hogs allegedly trespassed on defendant railroad's right-of-way, the trespass could not be pleaded as a counterclaim in an action by the hog's owner for damages for the negligent killing of the hogs. *St. Louis & S.F.R. Co. v. Bradfield*, 18 Okl. 154, 88 P. 1050 (1907). The counterclaim was stricken as a sham and the court said ". . . how the trespass of the hogs on the grass growing on the right-of-way would be connected with the subject matter of the action, which was a charge of negligently killing them in the operation of the road, we are unable to

perceive." While this connection was insufficient, the Supreme Court held that the wrongful conversion of property subject to a chattel mortgage was a proper counterclaim in an action on the note and for foreclosure of the mortgage. *Wilson v. Tihcheff,* 196 Okl. 243, 164 P.2d 396 (1946).

In *Union Nat. Bank of Okmulgee v. Jones,* 152 Okl. 211, 4 P.2d 62 (1931) the Supreme Court cited with approval *Van v. Madden,* 132 App.Div. 535, 116 N.Y.S. 1115 which "construed the phrase 'connected with the subject of the action' as meaning connected with the facts constituting the cause of action." *Union Nat. Bank of Okmulgee,* supra, 4 P.2d at 64.

The most recent discussion of the counterclaim in Oklahoma occurred in *Meyer v. Vance,* 406 P.2d 996 (Okl.1965). In that case the Court held that an action for damages for the illegal appointment of a receiver and for harm to the party's business and reputation was a proper counterclaim in an action to foreclose a mortgage and appoint a receiver even though the counterclaim did not exist at the time the action was filed. The Court approvingly cited *Perrault v. Holland,* 360 P.2d 240 (Okl.1961) to the effect that the counterclaim statute was remedial and to be liberally construed. Cf. 12 O.S.1971, § 2 to the effect that statutes in derogation of the common law "shall be liberally construed to promote their object." The object of the counterclaim statute had been said to be the avoidance of a multiplicity of lawsuits. *Perrault v. Holland,* supra, and cf. Blume, A Rational Theory for Joinder of Causes of Action and Defenses, and for the Use of Counterclaims, 26 Mich.L. Rev. 1 (1927).

This review of the law, brief as it is, leads us to agree with the court in *Wiles v. Suydam,* 64 N.Y. 173, 177 wherein it observed:

"To invent a rule for determining what the 'same transaction' means, and when a cause of action shall be deemed to 'arise out' of it, and what the 'same subject of action' means, and when transactions are to be deemed connected with it, has taxed the ingenuity of many learned judges. . . . Judge Comstock says of this

clause: 'Its language is I thinks [sic] well chosen for the purpose intended, because it is so obscure and so general as to justify the interpretation which shall be found most convenient and best calculated to promote the ends of justice'." [Citations omitted].

 Guided by these counsels we must decide whether the slander can be said to have arisen out of the transaction which is the foundation of the alleged assault and battery or whether it was connected with the subject matter of the assault and battery. In making this determination we must be lead by the injunction to interpret the statute in a manner which avoids a multiplicity of lawsuits and promotes justice.

While being connected with the subject of the action means being connected with the facts giving rise to the plaintiff's cause of action, it is not necessary that the counterclaim be implied by the plaintiff's petition. The statute (§ 272) specifically contemplates the inclusion of "new matter" in the counterclaim. While the requirement that the counterclaim arise out of the transaction which is "the foundation of the plaintiff's claim" seems to imply "that some or all of . . . [the material facts which provide the factual setting for the plaintiff's claim] are also common to, and form a part of, the operative facts set forth in the . . . [counterclaim]", Clark, supra, p. 654, the alternative requirement of connection with the factual basis of the plaintiff's claim seems to allow "as a counterclaim, any cause of action which, although not a part of the plaintiff's transaction, would, upon trial, raise issues which are so like those raised by the complaint that justice and expediency require that they should be tried together." Clark, supra, p. 655. See also Gavit, The Code Cause of Action: Joinder and Counterclaims, 30 Colum.L.Rev. 802, 824 (1930).

Gavit, supra, p. 830, suggests:

"The test here should be, then, is there a *common fact?* That can be determined by the application of the 'but for' or cause in fact test with which the courts

are already familiar in the field of torts. That is, 'but for' one fact common to the factual situations, forming the bases of the various paragraphs of complaint and counterclaim, would these asserted rights have come into being?" (Emphasis original) p. 830.

It is clear to us that there is a causal nexus between the two claims. A discussion concerning the alleged slander resulted in the alleged assault and battery. While each legal right alleged does not arise out of the same facts it seems to us that the factual basis of the assault and battery is connected with the factual basis of the slander.

Since the evidence on provocation is admissible in mitigation of the punitive damages, it serves no legitimate purpose to exclude from the jury's consideration the defendant's claim based on that evidence. The policy of avoiding a multiplicity of litigation and the promotion of justice strongly calls for the litigation in one proceeding of those disputes between parties which are related. We must be careful to note that we deal with a rule of pleading. In an appropriate situation a counterclaim "connected with" the claim may involve facts too remote or complicated for just determination in a single proceeding. In such cases, although the counterclaim may be permitted, the court may order separate trials as a matter of discretion. This result is supported further by its application in cases where the counterclaim is barred by the statute of limitations. By § 273 the counterclaim is not barred so long as the "claim may be litigated." Recoupment at common law was developed to prevent recovery by a plaintiff when the defendant had a related and offsetting claim. Where the minimal relation required by the "connected with" language is viewed in the light of this principle and the desires of the fair administration of procedural justice and is liberally construed to effectuate its remedial objectives, it seems clear that permitting this counterclaim effectuates those policies while denying it frustrates them.

Accordingly, we reverse the decision of the district court and remand for further proceedings consistent with these views.

REVERSED AND REMANDED.

REYNOLDS, P. J., and BOX, J., concur.